UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOUGLAS C. GREER,<br>     Plaintiff,<br><br>v.<br><br>CITY OF SPRINGFIELD, JEFFREY M.<br>ASHER, JAMES F. KERVICK, JAMES L.<br>SHEWCHUCK, JAMES M. MORIARTY,<br>JOHN DOES Nos. 1-4, JOHN DOE<br>No. 5, and PAULA MEARA, CHIEF OF<br>POLICE,<br>     Defendants. | Docket No.<br><br>05 - 30001 - MAP |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.  This is an action brought pursuant to 42 U.S.C § 1983 and G.L. c. 12, §§ 11H and 11I, arising out of an incident of police brutality in which the plaintiff, Douglas C. Greer, was viciously beaten by Springfield, Massachusetts police officers. Defendants City Of Springfield, the Chief of the Springfield Police Department, a police supervisor and several Springfield police officers are jointly and severally liable for violating the plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and under the Constitution of the Commonwealth of Massachusetts, and for all injuries he sustained as a result of the constitutional violations.

### JURISDICTION AND VENUE

2.  Jurisdiction over this action lies in this Court pursuant to 28 U.S.C. § 1331 and § 1367, which gives this Court supplemental jurisdiction over pendant state claims.

3. Venue in this Court is proper because the illegal acts complained of herein occurred in the City of Springfield, Hampden County, Massachusetts.

## THE PARTIES

4. Plaintiff Douglas C. Greer is a resident of Springfield, Hampden County, Massachusetts. Plaintiff is a United States citizen and he is an African American male.

5. At all times relevant to this Complaint, Defendants Jeffrey M. Asher ("Asher"), James F. Kervick ("Kervick"), James L. Shewchuck ("Shewchuck"), James M. Moriarty ("Moriarty"), John Does Nos. 1-4, and John Doe No. 5 were sworn members of the City of Springfield Police Department. Each of the foregoing defendants is being sued in his or her individual capacity. Unless otherwise noted, Defendants Asher, Kervick, Shewchuck, Moriarty, and John Does numbers 1-4 will hereinafter be referred to, collectively, as the "police defendants". Unless otherwise noted, John Doe number 5 will hereinafter be referred to as the "supervisory defendant". At all times relevant to this Complaint, the police defendants and the supervisory defendant were acting under color of state law.

6. At all times relevant to this Complaint, Paula Meara ("Meara") was the Chief of Police of the Springfield Police Department. In that position, she was responsible for ensuring that the officers on the police force were properly supervised and trained to interact with members of the public without violating their rights under the constitutions of the United States and the Commonwealth of Massachusetts, and for preventing and eliminating all policies and practices that encourage or allow police officers to violate the constitutional rights of members of the public with whom they

2

interact. Meara is being sued in her individual capacity. At all times relevant to this complaint, Meara was acting under color of state law.

7. Defendant City of Springfield ("Springfield") is a municipal corporation located in Hampden County, Massachusetts. At all times relevant to this Complaint, Springfield was the public employer of Meara, the police defendants, and the supervisory defendant. Springfield is responsible for the proper functioning of the police department and for ensuring that all officers on the police department are properly supervised and trained to interact with members of the public without violating their rights under the constitutions of the United States and the Commonwealth of Massachusetts. It is also responsible for preventing and eliminating all policies and practices that allow or encourage police officers to violate the constitutional rights of members of the public with whom they interact.

## FACTUAL BACKGROUND

8. At all times relevant to this Complaint, plaintiff was employed as the principal of the Robert M. Hughes Academy Charter School in Springfield.

9. On the evening of November 4, 2004, plaintiff was driving his vehicle, a 1995 BMW, near the intersection of Main Street and Saratoga Street in Springfield. Plaintiff was dressed in a blazer, a button down shirt, and a tie. It was raining heavily.

10. Plaintiff suffers from Type I diabetes. He keeps a placard indicating that he is a diabetic in the glove compartment of his vehicle, attached to his registration. While operating his vehicle on the evening of November 4, plaintiff began to feel disoriented, a symptom he recognized as signaling the imminent onset of a low sugar ("diabetic") reaction. Plaintiff drove his car onto the lot of a service station/convenience

store on Saratoga Street in order to exit the flow of traffic and to purchase candy or juice in an attempt to stave off a diabetic reaction. He stopped near one of the gas pumps with his car running.

11. Plaintiff continued to experience the diabetic reaction and was unable to get out of his vehicle. After plaintiff's vehicle had been in the lot for some time, an employee of the convenience store tapped on the window of plaintiff's car to get his attention. Plaintiff was just sitting in the car and did not respond. The attendant returned to the convenience store and called police.

12. Several marked police cruisers and many police officers arrived at the service station, including the police defendants. Cruisers parked directly in front of plaintiff's vehicle and directly behind it, blocking his vehicle in. Several of the police defendants approached plaintiff's vehicle. At the time, at least four of the police defendants had shotguns pointed at the plaintiff.

13. Moriarty broke the driver's side window of plaintiff's car with the butt of the shotgun he was carrying and Asher broke the window on the passenger's side with the butt of a shotgun. Kervick, Asher and another of the police defendants reached into the plaintiff's vehicle, grabbed him, and dragged him across the console and passenger seat of the vehicle and out through the passenger side window. When he was pulled completely through the window, the police defendants allowed plaintiff to drop to the ground. He hit the ground, face first. The doors to plaintiff's car were not locked.

14. Kervick, Asher, and some of the remaining police defendants began beating and kicking plaintiff on his head and body. The officers slammed plaintiff's head

4

against the ground. Plaintiff's face was pressed into the broken glass that was on the ground as a result of the defendants having broken the windows of his car.

15. Initially, Shewchuck, Moriarty, and several of the police officers, identified herein as John Does 1-4, stood by and watched plaintiff being beaten by other officers. Both Shewchuck and Moriarty subsequently choked plaintiff, and they and other officers participated in beating and kicking plaintiff while he was on the ground.

16. The plaintiff told the officers that he was diabetic and that he needed juice or sugar. The police defendants nonetheless continued to beat and kick him and repeatedly yell that he was on drugs. The police defendants also continuously asked plaintiff "where are the drugs"? Plaintiff had not ingested any drugs and did not have any illegal drugs in his possession.

17. One of the police defendants kicked plaintiff on his ankles in order to spread his legs apart. Two other officers pulled plaintiff's arms straight out at 90 degree angles to his body so that he was in a "spread eagle" position on the ground. One officer then stood on plaintiff's left wrist and another stood on his right wrist. A third officer stood on plaintiff's left ankle and a forth stood on his right ankle. A fifth officer placed his knee and his full weight on plaintiff's back. Plaintiff was unable to breath in that position. When plaintiff told the officers that he could not breathe, they refused to allow him to get up to breathe. One of the police defendants said to the plaintiff "we cannot let you up, where are the drugs – you are in a drug neighborhood and you have drugs."

18. While plaintiff was on the ground, one of the police defendants removed from the trunk of one of the cruisers an object that appeared to be a police baton. The officer proceeded to poke plaintiff hard with the object. Plaintiff's screams of pain could

be heard by observers. Another officer hit plaintiff at least three times in the face with an object that also appeared to be a police baton. Yet another of the police defendants hit plaintiff with a metallic object that appeared to be a flashlight.

19. Plaintiff continued to tell the officers that he was a diabetic and that he needed sugar or juice. The police defendants nonetheless handcuffed plaintiff with his arms behind his back and they placed shackles on his legs. At the time, plaintiff was bleeding profusely from wounds to his head and cuts on his face. A large pool of his blood formed on the ground.

20. The police defendants eventually lifted plaintiff off the ground and placed him on his knees on the pavement. It was still raining heavily. At the time, plaintiff was weak and he was dazed from the beating. As a result, he fell forward several times.

21. After the police defendants dragged plaintiff from his car through the window, they brought two canines to his vehicle: one sniffed the interior of the vehicle and the other sniffed the trunk of the vehicle, which had been opened by the police defendants. The police defendants also looked through papers and files plaintiff had in his vehicle. No illegal drugs or other contraband were found.

22. The police defendants also opened and looked through plaintiff's briefcase. Inside the briefcase, one of the police defendants found plaintiff's insulin, the needle with which he injects the insulin, and his license, which indicates that he is a diabetic. The officer approached plaintiff with the needle and said that the reason officers thought plaintiff was on drugs was because they had found the needle. Though the police defendants had not found any drugs and now knew that plaintiff was a diabetic, they did not release him or remove the handcuffs and shackles.

23. An ambulance eventually arrived on the scene. The emergency medical technicians ("EMTs") asked the police defendants to remove the handcuffs from plaintiff's wrists and the shackles from his legs so that they could treat him. The police defendants refused to remove the handcuffs and shackles. Instead, they dragged plaintiff along the wet ground to the place where the EMTs had placed a stretcher. Two of the police defendants accompanied plaintiff to the emergency room in the ambulance. The handcuffs and shackles remained on plaintiff's wrists and legs until after he arrived at the emergency room of the Baystate Medical Center and was being treated for his diabetic condition and for the injuries he sustained.

24. Just before the ambulance arrived at the service station, the police defendants obtained paper towels, with which they wiped plaintiff's blood off their hands.

25. Once plaintiff arrived at the emergency room, one of the police defendants told him that the officers were considering charging him with disorderly conduct and resisting arrest, but that they had to wait until a sergeant arrived. When the sergeant, who is identified herein as John Doe No. 5 (the supervisory defendant), arrived at the emergency room, the officer who had been talking to plaintiff said he had to speak with the sergeant and left the room.

26. The officer returned to plaintiff's room along with the supervisory defendant. The supervisory defendant told plaintiff that since it was now clear that plaintiff had experienced a diabetic reaction, he would speak with the other officers involved in the incident to find out whether they still wanted to file charges against the plaintiff. The supervisory defendant also told plaintiff that if he was arrested for

7

disorderly conduct, he might be suspended from his job until everything was cleared up. He told plaintiff: "since we don't want that to happen", if plaintiff agreed not to file charges against the police defendants, they would write up the entire incident as an "ambulance assist".

27. Plaintiff was not arrested or charged with any crime.

28. At no time during the entire incident did either of the police defendants ask plaintiff whether he was ill and none of the officers responded to his cries that he was diabetic and that he only needed sugar or juice.

29. At no time during the entire incident did plaintiff struggle or otherwise pose a threat to any officer or to any other person.

30. Asher filed a false police report about the incident in an attempt to conceal his unlawful conduct and that of the other police defendants.

31. At the time the police defendants initially approached plaintiff's vehicle, plaintiff was experiencing a diabetic reaction and was in a helpless position. He did not pose a threat to the police defendants or to any other individual then or at any time during the entire incident. The police defendants' use of force against him was unnecessary, excessive, objectively unreasonable, and violated his rights under the Fourth and the Fourteenth Amendments of the United States Constitution and under the Massachusetts Constitution.

32. The police defendants' acts of pulling plaintiff out of his car through the passenger side window, handcuffing his wrists, shackling his legs, and detaining him constituted a seizure of his person. The seizure was unwarranted, objectively unreasonable, and without probable cause. The unjustifiable interference with plaintiff's

freedom of movement and his liberty as a result of the seizure violated the plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and under the Massachusetts Constitution. The egregiousness of the police defendants' actions was compounded by their unreasonable failure to release plaintiff from custody and remove the handcuffs and shackles once they learned that he was suffering from a diabetic reaction and did not have any illegal drugs in his possession.

33.     The police defendants' acts of looking through and causing dogs to sniff the passenger compartment and trunk of plaintiff's vehicle, examining his personal papers, and opening and examining the contents of his briefcase, without probable cause and without a warrant, constituted an unreasonable search and violated plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and under the Massachusetts Constitution.

34.     Each officer at the scene at the time plaintiff was beaten had an independent duty to act to enforce the law and ensure that the other officers acted within the law. By participating in, condoning, acquiescing in, or failing to stop the violations of plaintiff's constitutional rights, each officer at the scene became culpable for violating plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the Massachusetts Constitution.

35.     Once plaintiff had been detained by the police defendants, they had an obligation to ensure that he received prompt medical care for his diabetic condition and the injuries they caused by beating him. Their failure to render treatment to plaintiff or release him from the handcuffs and shackles to allow EMTs to treat him effectively were

violations of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and under the Massachusetts Constitution.

36. The supervisory defendant exhibited a callous disregard for the constitutional rights of the plaintiff by indicating that the plaintiff would be arrested and remain in custody pursuant to the unlawful seizure unless plaintiff agreed not to file charges against the police defendants.

37. The police defendants were not properly trained in: (1) how to ascertain whether an individual is ill, otherwise suffering from a debilitating physical condition, or engaged in criminal behavior; (2) how to approach an individual who is ill or otherwise suffering from a debilitating physical condition without violating the individual's constitutional rights; (3) the appropriate use of force; (4) the constitutionally acceptable scope of a warrantless search; (5) recognizing when a warrant should be obtained in order to conduct or continue a search; and (6) how to determine whether probable cause exists to seize an individual.

38. The violations of plaintiff's constitutional rights were a direct result of the police defendants' lack of training. Springfield and Meara are responsible for ensuring that Springfield police officers are properly trained to avoid violating the constitutional rights of members of the public with whom they come into contact. The failure of Springfield and Meara to ensure that police officers were properly trained amounted to a deliberate indifference to the constitutional rights of persons with whom the police defendants came into contact.

39. The violations of plaintiff's constitutional rights are also a direct result of the police defendants not being properly supervised. It is Springfield's responsibility to

ensure that the leadership of the police department makes provisions for police officers to be adequately supervised, thereby discouraging and preventing unconstitutional behavior. It is Meara's responsibility to ensure that officers on the street are actually supervised, thereby preventing and discouraging unconstitutional behavior. The failure of Springfield and Meara to ensure that police officers were properly supervised amounted to a deliberate indifference to the constitutional rights of persons with whom the police defendants came into contact.

40. One of the police defendants, Asher, had been suspended previously from the police force for an extended period of time for kicking a suspect. He was nonetheless allowed by Springfield and Meara to remain on the police force and to interact with members of the public, despite a proven propensity for mistreating members of the public with whom he came into contact. Springfield and Meara were aware of this propensity and did not take appropriate action to supervise Asher and prevent him from violating the constitutional rights of members of the public with whom he came into contact.

41. That Springfield and Meara allowed Asher to remain on the police force and continue to interact with members of the public is indicative of their callous disregard for and deliberate indifference to the constitutional rights of members of the public, including the plaintiff. By their actions and inaction, Springfield and Meara gave Asher tacit approval for his unconstitutional conduct. They acquiesced to and permitted Asher to engage in behavior that posed a grave risk to the constitutional rights of member of the public, thereby creating a custom or policy under which he was not discouraged from engaging in unconstitutional conduct and, in fact, allowed to do so.

42. The foregoing actions and inaction by Springfield and Meara were the proximate and direct causes of the injuries sustained by plaintiff.

43. Each of the defendants acted with callous disregard for and deliberate indifference to the plaintiff's constitutional rights.

44. As a result of the unconstitutional treatment to which he was subjected, plaintiff suffered multiple lacerations and bruises on his face, head, hands, and knees, and he had to receive multiple stitches in his hands and on his face. He will likely have permanent scars on his face and body. Plaintiff also suffered humiliation and emotional pain and suffering.

## COUNT I
## 42 U.S.C. § 1983

### v. Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5.

45. Plaintiff realleges and incorporates paragraphs 1 through 44 as if set forth fully herein.

46. By their actions set forth above, Defendants Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5 knowingly, willfully, and intentionally deprived plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and under the Massachusetts Constitution while acting under color of law, in violation of 42 U.S.C. § 1983.

47. Defendants Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5 also conspired among themselves to violate plaintiff's rights under the constitutions of the United States and Massachusetts. In furtherance of the conspiracy, defendants beat plaintiff, subjected him to an unreasonable search and

seizure, deprived him of prompt and appropriate medical attention, and together, attempted to conceal their unlawful acts by threatening him and filing a false police report, in violation of 42 U.S.C. § 1983.

48. As a result of defendants' violations of 42 U.S.C. § 1983, plaintiff suffered harm.

49. WHEREFORE, plaintiff demands that this Court enter Judgment in his favor against Defendants Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5 in an amount to be determined by this Court, including compensatory and punitive damages, compensation for his emotional pain and suffering, interest, costs, attorneys' fees, and such other further relief as this Court deems just and proper.

## COUNT II
## G.L. c. 12, §§ 11H and 11I

### v. Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5.

50. Plaintiff realleges and incorporates paragraphs 1 through 49 as if set forth fully herein.

51. By their actions set forth above, Defendants Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5, while acting under color of law, knowingly, willfully, and intentionally attempted to interfere with, and in fact, interfered with plaintiff's ability to enjoy the rights and privileges guaranteed him by the constitutions of the United States and Massachusetts by the use of threats, intimidation and coercion, in violation of G.L. c. 12, §§ 11H and 11I.

52. As a result of defendants' violations of G.L. c. 12, §§ 11H and 11I, plaintiff suffered harm.

53. WHEREFORE, plaintiff demands that this Court enter Judgment in his favor against Defendants Asher, Kervick, Shewchuck, Moriarty, John Does Nos. 1-4, and John Doe No. 5 in an amount to be determined by this Court, including compensatory and punitive damages, compensation for his emotional pain and suffering, interest, costs, attorneys' fees, and such other further relief as this Court deems just and proper.

## COUNT III
## 42 U.S.C. § 1983 v. Meara

54. Plaintiff realleges and incorporates paragraphs 1 through 53 as if set forth fully herein.

55. By her action and inaction as set forth above, Meara knowingly, willfully, and intentionally allowed a policy and custom to exist which resulted in violations of plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and under the Massachusetts Constitution, in violation of 42 U.S.C. § 1983.

56. As a result of Meara's violations of 42 U.S.C. § 1983, plaintiff suffered harm.

57. WHEREFORE, plaintiff demands that this Court enter Judgment in his favor against Meara in an amount to be determined by this Court, including compensatory and punitive damages, compensation for his emotional pain and suffering, interest, costs, attorneys' fees, and such other further relief as this Court deems just and proper.

## COUNT IV
## 42 U.S.C. § 1983 v. City of Springfield

58. Plaintiff realleges and incorporates paragraphs 1 through 57 as if set forth fully herein.

59. By its action and inaction as set forth above, Springfield knowingly, willfully, and intentionally allowed a policy and custom to exist which resulted in violations of plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and under the Massachusetts Constitution, in violation of 42 U.S.C. § 1983.

60. As a result of Springfield's violation of 42 U.S.C. § 1983, plaintiff suffered harm.

61. WHEREFORE, plaintiff demands that this Court enter Judgment in his favor against Springfield in an amount to be determined by this Court, including compensatory and punitive damages, compensation for his emotional pain and suffering, interest, costs, attorneys' fees, and such other further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**

DOUGLAS C. GREER

By his attorneys,

Walter B. Prince, BBO #406640
William A. Worth, BBO #544086
Joseph L. Edwards, BBO #564288
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Douglas C. Greer

**DEFENDANTS**

See Attached

**(b)** County of Residence of First Listed Plaintiff  Hampden
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attached

Attorneys (If Known)

05-30001-MAP

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / Habeas Corpus: |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land |  | ☐ 530 General |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  | / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☒ 440 Other Civil Rights |  |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983 (violations of 4th and 14th amends. to U.S. Const.

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE 1/6/05

SIGNATURE OF ATTORNEY OF RECORD
Joseph L. Edwards Jr.

**FOR OFFICE USE ONLY**

RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Douglas C. Greer v. City of Springfield__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   05 - 30001 - MAP

   ☐ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☒ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ☐ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒   NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division ☐   Central Division ☐   Western Division ☒

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Joseph L. Edwards, Jr., Walter B. Prince, William A. Worth__
ADDRESS __Prince, Lobel, Glovsky & Tye, 585 Commercial Street, Boston, MA 02109__
TELEPHONE NO. __617-456-8000__

(Coversheetlocal.wpd - 10/17/02)