

United States District Court
District of Massachusetts

DOUGLAS C. GREER,
    PLAINTIFF,

v.

CIVIL ACTION NO. 05-30001-MAP

CITY OF SPRINGFIELD, JEFFREY M.
ASHER, JAMES F KERVICK, JAMES L.
SHEWCHUCK, JAMES M. MORIARTY,
JOHN DOES Nos. 1-4, JOHN DOE, No. 5,
and PAULA MEARA, CHIEF OF POLICE,
    DEFENDANTS.

---

### MEMORANDUM IN SUPPORT OF
### MOTION TO BIFURCATE AND STAY MONELL DICOVERY
### BY
### DEFENDANTS CITY OF SPRINGFIELD, JEFFREY M. ASHER, JAMES F KERVICK, JAMES L. SHEWCHUCK, JAMES M. MORIARTY, JOHN DOES Nos. 1-4, JOHN DOE, No. 5, and PAULA MEARA, CHIEF OF POLICE

---

Defendants, **DEFENDANTS CITY OF SPRINGFIELD, PAULA MEARA, CHIEF OF POLICE** pursuant to Fed. R. Civ. P. 42, have moved this Court to enter an Order bifurcating the *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) claim against the City of Springfield and retired Police Chief Paula Meara from the claims against the individual Defendant officers.

Further, the same Defendants move that discovery pertaining to the *Monell* claims against the City of Springfield, should be stayed until after the trial against the individual officers is concluded.

53772

During this struggle Mr. Greer suffered multiple lacerations most of which were superficial. Believing the Plaintiff may need medical assistance the officers radioed for an ambulance and waited for medical aid to arrive. By the time the ambulance arrived at the scene Mr. Greer had calmed down and informed the police he was a diabetic and must have had a blacked out. Concerned that Mr. Greer may have another violent episode the Plaintiff was kept in restraints and two police officers rode along with him to a local hospital.

The Plaintiff alleges that the above acts amounted to a deprivation of civil rights and that the deprivation was directly and proximately caused by the negligent failure of the Springfield Police Department to adequately screen, test, train, supervise, investigate and discipline its police officers to the extent that this custom and practice and acquiescence of supervisory officials resulted in an unconstitutional policy.

No specific allegations as to the City's unconstitutional acts is alleged other than conlcusory statements set forth in Counts three (III) and four (IV) of the Plaintiffs complaint which alleges that the City, Merrea, and Chief of Police knowingly, willfully, and intentionally allowed a policy and custom to exist which resulted in violations of Plaintiffs rights under the Forth and Fourteenth Amendment to the United States Constitution and Massachusetts Constitution. The City and Defendants have answered the complaint denying the allegations.

Discovery has been ongoing but is currently incomplete. Deposition of non-municipal witnesses has been taken and the individual officers named in this matter will be deposed in the near future (starting August 30, 2006). No municipal employees or agents have been deposed. Paper discovery in regards to police training and discipline has been provided, but the City's response includes objections to the material and issue which are burdensome and confidential. Further, Discovery pertaining to the claim under *Monell v. Department of Social Services of the*

53772

It is alleged that on November 4, 2004, Douglas Greer was suffering a diabetic reaction in his 1995 green BMW which was parked parallel to a gas pump at the One Stop Gas service station located on Main Street, Springfield, Massachusetts. Noticing that the BMW had been parked and running for over an hour, a service station employee approached the vehicle. The employee was unable to observe the Plaintiff due to the vehicles tinted windows and was unsuccessful in his attempt to make contact with Plaintiff by tapping on the driver side window. The employee then called 911 to which Springfield police officer James Moriarty responded and soon arrived at the scene.

The Officer found a still running green 1995 BMW parked at a pump with a gasoline nozzle underneath the car. The Officer was unable to gain an unobstructed view into the vehicle and could only make out a shadow rocking and thrashing about inside the vehicle. The Officer, unable to make contact with the driver by knocking on the driver side window, attempted to open the door but found it locked. Based on these facts the Officer called for backup. Addition support arrived shortly thereafter and the Officers again attempted to make contact with the Plaintiff by pounding on both sides of the vehicle but to no avail. Finally, the Officers formulated a plan to gain entry to the vehicle by creating a diversion. The Officers smashed both the passenger and driver side windows and extricated the Plaintiff from the vehicle via the front passenger side.

While being extricated from the vehicle the Plaintiff became extremely violent. It took eight police officers using all their strength to subdue the Plaintiff. The officers called Headquarters for shackles to assist them in restraining the Plaintiff. Believing that the Plaintiff's violent behavior may have been due to being under the influence of an illegal substance the police officers at the scene searched the Plaintiff's vehicle.

53772

Case 3:05-cv-30001-MAP    Document 20    ...

*City of New York*, 436 U.S. 658 (1978) against the City on a theory of improper training or policies, should be stayed until after the trial against the individual officers is concluded

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the civil rights claims set forth in the Complaint against the City of Springfield, should be separately tried from the civil rights claims against the individual officers. Bifurcation is appropriate in this case because it will prevent the introduction of prejudicial evidence which may taint the case of one of the parties, promote judicial economy, and limit the costs and burden of discovery.

## Argument

Fed. R. Civ. P, Rule 42 provides in relevant part:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third- party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Here, both purposes of Rule 42 would be met, as separate trials would "avoid prejudice" and be "in furtherance of convenience" and will be "conducive to expedition and economy,"

### 1. *Avoid prejudice.*

The trial of the individual police officers will involve different issues of fact and law and will involve the testimony of different parties than the trial of the City of Springfield. The claim against the City raises issues which will tend to complicate and confuse the issues raised against the Defendant officers, thereby causing prejudice. *See Ismael v. Cohen*, 706 F.Supp 243, (S.D.N.Y.1989). *Ismael* dealt with civil rights claims against a New York City police officer and the City. Separate trials were ordered as it was felt that evidence admissible on issues relating to the officer's conduct would "contaminate" the mind of the juror when considering the

53772

liability of the other Defendant, the city. *Ismael*, at 251. A separate trial for the Defendant officers is necessary in the present case to avoid prejudice and to more likely result in a just final disposition of the litigation.

Separate trials were also ordered to avoid prejudice in *Ricciuti v. New York City Transit Authority*, 796 F.Supp. 84, 86, (S.D.N.Y.1992) where a §1983 action was brought against police officers and various municipal entities. Bifurcation was allowed as it was noted that the case against the individual officers could be unfairly influenced by evidence of deficient training procedures implemented by the municipal entities conversely, the municipality could be prejudiced by evidence of the officers' aggressions.

In the present case, evidence offered against the City, involving policy issues or training or facts relating to hiring and discipline of officers, could prejudice the jury in its determination of the individual officers' liability. There is a strong probability of prejudice to the individual officers as well as the municipality, which cannot be remedied through limiting instructions.

2. *<u>Separate trial and discovery for the officers on the civil rights claims would be in the interest of judicial economy.</u>*

Without initially focusing on *Monell* claim issues, discovery would be simplified and limited in scope, and possibly avoided altogether, with regard to the City.

With regard to the general claims, discovery under such vague, conlcusory allegations as made here entails broad discovery requests amounting to a fishing expedition through the training, discipline and employment files of the Police Department in an attempt to find widespread failures so pervasive that they allow an "inference of supervisory encouragement, condonation or even acquiescence." *See Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985).

In fact, the Plaintiff has made such overbroad claims in requests for discovery here, in

53772

response to which, the Defendants have filed a motion for a protective order to limit discovery and provide a confidentiality order which is pending.

Since the discovery could be greatly simplified a separate trial against the individual officers could be scheduled sooner. The *Monell* claim, involved voluminous discovery of records. In addition, expert testimony on the training and supervision of police officers could be avoided. By separating the *Monell* claim from the case, not only will discovery be simplified, but the actual trial is likely to take less time, as expert testimony on training methods and disciplinary matters would not be necessary, thereby conserving judicial resources by initially reducing the number of trial days.

The court in *Ismael*, at 251, 252, held that the claims against the city would present more complex standards of liability which would greatly expand the scope of the trial, as well as increase the expense to the parties. In the present case, proof of the *Monell* claim would involve evidence that is unnecessary in the case against the police officers. This can be remedied through bifurcation.

Moreover, there is a possibility of avoiding trial of the case against the City and supervisors on the *Monell* claims if Plaintiff's claims against the individual officers are dismissed or otherwise disposed of in favor of these Defendants. Refer to *City of Los Angeles v. Heller*, 475 U.S. 796 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), *rehg denied*, 476 U.S. 1154 (1986), (jury finding that a police officer did not inflict any constitutional harm precludes excessive force damage award against a municipality). In *Los Angeles v. Heller,* the Supreme Court said that the district court correctly dismissed plaintiffs' claims against the city, because it could not be held liable for an injury that its police officers inflicted, despite proof of an unconstitutional city policy, after a jury had exonerated the individual police officers (in the first phase of a bifurcated

53772

trial). The Court wrote that neither

> *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.
> *Id.*, 475 U.S. at 799, 106 S.Ct. at 1573; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 921, 99 L.Ed.2d 107 (1988).

The district court in *Myatt v. City of Chicago, et al*, 816 F.Supp. 1259, (N.D.Ill.1992), citing *City of Los Angeles v. Heller*, ordered bifurcation of the individual liability claims against the individual officers and the *Monell* §1983 excessive force claim as different evidence was required to prove the individual Defendants' liability and the city's liability under *Monell*.

To make out a case for municipal liability under 42 U.S.C. § 1983, the Supreme Court has repeatedly held that liability can be found only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under §1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). The plaintiff here claims money damages pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the Commonwealth of Massachusetts against the Officers, City of Springfield Police Chief Paula Meara and against the City of Springfield.

With regard to the other general claims, discovery under such vague, conlcusory allegations usually entails broad discovery requests amounting to a fishing expedition through the training, discipline and employment files of the Police Department in an attempt to find widespread failures so pervasive that they allow an "inference of supervisory encouragement, condonation or even acquiescence." *See Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985).

In other similar cases involving these issues, the broad discovery requests associated with

53772

these types of *Monell* claims has led to pretrial disputes, motions and appeals involving protective orders. *See Santiago v. Fenton*, 891 F.2d 373 (1st Cir. 1989). Even if plaintiffs were successful in claims against the individual officers, with regard to the second phase of the litigation in the case against the City, the circumstances would lend more easily to an alternative method of dispute resolution, and potentially settlement.

If a civil rights violation were found and damages were awarded, defendants contend the only issue left to be tried would be whether the City should be joint and severably liable for the damages. This is an issue which not only lends itself to alternative resolution (such as settlement) but which may be able to be decided under jury waived proceedings.

### Conclusion

For the above stated reasons, the Defendant's Motion to Bifurcate should be allowed and discovery pertaining to the *Monell* claims against the City of Springfield, should be stayed until after the trial against the individual officers is concluded.

Respectfully Submitted,
THE DEFENDANTS

By, _(signed) Michael E. Mulcahy_
Michael E. Mulcahy, Esq.
Assistant City Solicitor
BBO# 561824
City of Springfield Law Department
36 Court Street
Springfield, MA 01103
(413) 787-6085
Fax: (413) 787-6173

53772

## CERTIFICATE OF SERVICE

To:
Walter B. Prince
William A. Worth
Joseph L. Edwards
Prince, Lobel, Glovksy & Tye, LLP
585 Commercial Street
Boston, MA 02109

    I, Michael E. Mulcahy, hereby certify that I caused the within document, to be served this date by serving electronically or by mailing a copy, via first class mail, postage prepaid to the above referenced people on this 29th day of August, 2006.

                                   X Michael E. Mulcahy

                                   Michael E. Mulcahy, Esq.

53772